MANNING CURTIS BRADSHAW
& BEDNAR PLLC
Alan C. Bradshaw, #4801
Chad R. Derum, #9452
Michael E. Harmond, #17230
136 East South Temple, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678
abradshaw@mc2b.com
cderum@mc2b.com
mharmond@mc2b.com

LEGENDS LAW GROUP, PLLC
Stephen H. Bean #9240
Nicholas Wells #10150
330 N Main
Kaysville, UT  84037
steve@legendslaw.com
nwells@legendslaw.com

*Attorneys for Plaintiff Kodiak Cakes, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| KODIAK CAKES, LLC, a Utah limited liability corporation,<br><br>    Plaintiff,<br><br>v.<br><br>JRM NUTRASCIENCES, LLC, a New York limited liability corporation, MUSCLE SPORTS PRODUCTS, LLC, a New York limited liability corporation, and JASON MANCUSO, an individual;<br><br>    Defendant. | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ITS ESTABLISHMENT OF COMMON LAW RIGHTS TO THE KODIAK MARKS**<br><br>Civil No. 2:20-cv-00581-DBB-JCB<br><br>District Judge David Barlow<br>Magistrate Judge Jared C. Bennett<br><br><br>*Redacted Version* |

Pursuant to Fed. R. Civ. P. 56(a), Plaintiff Kodiak Cakes, LLC ("Kodiak" or "Plaintiff")

respectfully submits the present Motion for Summary Judgment on Its Establishment of

Common Law Rights to the KODIAK Marks and Memorandum In Support ("Motion").

## TABLE OF CONTENTS

INTRODUCTION AND RELIEF SOUGHT ................................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................................ 3

*Kodiak's Business* ...................................................................................................................3

*Kodiak's Trademarks* ..............................................................................................................6

*Expert Survey Evidence Establishes That The Kodiak Single-word Word Mark Is A Strong Source Identifier for Kodiak's Products* .......................................................................8

*Defendants' Use of KODIAK In Commerce* ..........................................................................10

ARGUMENT ........................................................................................................................... 12

I. KODIAK HAS A PROTECTABLE INTEREST IN ITS UNREGISTERED KODIAK COMMON LAW MARKS AS A MATTER OF LAW ......................................13

   A.   The Kodiak Common Law Marks Are Inherently Distinctive ......................................14

   B.   Kodiak Has Nationwide Priority of Use In the Kodiak Common Law Marks..............15

II. PLAINTIFF'S LENGTHY USE OF "KODIAK CAKES" QUALIFIES AS USE OF THE SINGLE-WORD MARK "KODIAK" THROUGH BOTH DOMINANCE OF THE PROMINENT PORTION OF THE MARK AND THROUGH TRADEMARK TACKING ...........................................................................................................................19

   A.   The Word "KODIAK" Is The Dominant Portion of The Composite Mark "KODIAK CAKES" ...........................................................................................................19

   B.   Plaintiff May Also Establish Priority In the Kodiak Word Mark by Tacking Its First Use of KODIAK CAKES ...........................................................................................20

CONCLUSION........................................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

### CASES

*American Security Bank v. American Security Trust Co.*, 571 F.2d 564
(C.C.P.A. 1978) ......................................................................................................20

*Aubrey v. Koppes*, 383 F. Supp. 3d 1203 (D. Colo. 2019) ...........................................12

*B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015) ................................14

*Chevron Pipe Line Co. v. PacifiCorp*, 2:12-cv-287-TC, 2017 WL 3913255
(D. Utah Sept. 6, 2017) ...........................................................................................12

*Donchez v. Coors Brewing Co.*, 392 F.3d 1211 (10th Cir. 2004)...........................13, 14

*First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645 (10th Cir. 1996)...........14

*Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418 (2015) .............................................20, 22

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016 (10th Cir. 2021) .......16

*Laura Scudder's v. Pac. Gamble Robinson Co.*, 136 U.S.P.Q. 418, 1962 WL 8576 (T.T.A.B.
1962) .......................................................................................................................20

*Lawrence v. First Fin. Invest. Fund V, LLC*, 444 F. Supp. 3d 1313 (D. Utah 2020) ...................15

*Peaches Ent't Corp. v. Ent't Repertoire Ass'n*, 62 F.3d 690 (5th Cir. 1995)................................16

*Proxite Prods., Inc. v. Bonnie Brite Prods. Corp.*, 206 F. Supp. 511 (S.D.N.Y. 1962) ...............19

*Rockland Exposition, Inc. v. All. Of Auto. Serv. Providers of New Jersey*, 894 F.
Supp. 2d 288 (S.D.N.Y. 2012)..................................................................................14

*Sara Lee Corp. v. Sycamore Fam. Bakery, Inc.*, No. 2:09-cv-523-DAK, 2009
WL 3617564 (D. Utah Oct. 27, 2009) .....................................................................20

*Underwood v. Bank of Am. Corp.*, 996 F.3d 1038 (10th Cir. 2021).............................15

*Universal Motor Oils Co., Inc. v. Amoco Oil Co.*, 15 U.S.P.Q. 2d 1613, 1990
WL 86178 (D. Kan. May 24, 1990)...........................................................................19

**RULES**

Fed. R. Civ. P. 56 .................................................................................................................12

**STATUTES**

15 U.S.C. § 1127 .................................................................................................................16

**OTHER**

*Kodiak*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/Kodiak .........14

McCarthy on Trademarks and Unfair Competition § 11:11 (5th ed. 2022) ..................................14

McCarthy on Trademarks and Unfair Competition § 17:26 (5th ed. 2022) ..................................21

## INTRODUCTION AND RELIEF SOUGHT

In its complaint, Kodiak asserts infringement of its federally registered trademarks *and* its common law trademarks. *See* First Amended Complaint, Dkt. 28, ¶¶ 63-76. This motion seeks summary judgment on the discrete issue that Kodiak has established common law rights to its single-word mark KODIAK (the "Kodiak Word Mark") and its design mark depicting the titled head of a roaring bear protruding from an annular ring (the "Bear Mark") (collectively, the "Kodiak Common Law Marks"). An example of the Bear Mark is as follows:



 The issue at hand is only the existence of these common law trademark rights and *not* whether defendants have infringed these two marks. A favorable ruling via summary judgment that Kodiak has protectable rights to these two common law marks will limit the upcoming trial to the remaining issues of just infringement and damages. The Federal Rules of Civil Procedure expressly provide that a party may file for summary judgement on a portion of a claim, which plaintiff is now doing. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment . . . [on] the part of each claim . . . on which summary judgment is sought").

Plaintiff holds federal trademark registrations for different versions of it common law marks. A federal registration for the earliest version of the Bear Mark was issued on August 6, 1996. Ex. A, U.S. Trademark Reg. No. 1992074. A more recent version of the Bear Mark was

registered on May 15, 2018.  Ex. B, U.S. Trademark Reg. No. 5471172.  Plaintiff also received a

federal trademark registration for the Kodiak Word Mark on August 3, 2021.  Ex. C, U.S.

Trademark Reg. No. 6441657.  These registrations, however, do not supplant Kodiak's common

law rights to the marks, with Kodiak's use of the marks in commerce dating long before some

trademark application filing dates.  As set forth below, it is undisputed that Kodiak has been

using the Kodiak Common Law Marks in regional interstate commerce in the Mountain West

since November 1995 for pancake mixes, waffle mixes, and other nutritious food products.

Kodiak has also been using the Kodiak Common Law Marks nationwide since at least as early as

2004 for these same health-focused, nutritious food products.  Tens of millions of consumers

nationwide have now purchased Kodiak's branded products with total sales exceeding hundreds

of millions of dollars.  *See* Ex. D, Declaration of Joel Clark, ¶¶ 24-27.  Clearly, after over

twenty-five years of use and a steady, successful nationwide expansion, Kodiak has established

nationwide rights in the Kodiak Common Law Marks.

Given the undisputed evidence on these issues, granting Kodiak's Motion will benefit

both the parties and the court by streamlining trial to focus primarily on likelihood of

confusion—an issue common to Kodiak's federal and common-law infringement claims – and

damages.  Accordingly, Kodiak asks the Court to rule as a matter of law that it has a nationwide

protectable interest in the two Kodiak Common Law Marks.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### *Kodiak's Business*

1.      Kodiak is a local Park City, Utah company that sells health-focused, high-protein, nutritious food products.  Ex. D, Declaration of Joel Clark (Clark Decl.), ¶¶ 2-4.

2.      Joel Clark and his brother, Jon, founded Kodiak Cakes in 1994.  *Id.*, ¶ 3.  While Jon initially wanted to name the business "Bear Cakes," the brothers instead decided on the name "Kodiak Cakes" based on Jon's lifelong fascination with Kodiak Island, Alaska.  *Id.*, ¶ 12.  The island personified the rustic, outdoor, frontier feel Jon wanted to bring to the brand.  *Id.*

3.      On November 27, 1995, the Clark's began selling pancake mixes based on their grandfather's whole-grain flapjack mix under the Kodiak Common Law Marks.  *Id.*, ¶¶ 3, 8, 13. They sold health-focused, nutritious food products, including pancake mixes, muffins, and baking mixes.  *Id.*, ¶ 8; *id*, Ex. 2.

4.      In Kodiak's early years, Jon and Joel Clark sold products under the Kodiak Common Law Marks in tourist towns like Park City, Sun Valley, and Jackson Hole.  *See id.*, ¶ 14.  They sold their products through small gift shops to locals as well as to skiers and tourists from all over the United States.  *Id.*

5.      After taking over the business in 1997, Joel Clark worked to steadily expand Kodiak's brand.  *Id.*, ¶ 15.

6.      In 2004, Kodiak began distributing the same class of goods bearing the Kodiak Common Law Marks through the Safeway grocery chain, which had 1,802 stores in the Western, Southwestern, Rocky Mountain, Midwestern, and Mid-Atlantic regions of the United States.  *See* Clark Decl. ¶ 16; *see also* Ex. E, Safeway 2004 Annual Report, p. 2.

7.     In 2012, Kodiak landed a deal with Target.  Clark Decl. ¶ 17.  Under this deal, Kodiak products were sold under the Kodiak Common Law Marks at all Target stores nationwide.  *Id.*

8.     In early 2014, Kodiak appeared on the nationwide television show "Shark Tank". *Id.*, ¶ 18.  Kodiak's "Shark Tank" appearance was an enormous publicity boon.  Sales of the company's products spiked nationwide for the six weeks following the airing of the Kodiak "Shark Tank" episode.  *Id.*, ¶ 19.  Joel Clark estimates that Kodiak earned   [redacted]   in incremental revenue during this period.  *Id.*

9.     By the end of 2014, Kodiak was selling its health-focused, nutritious products under the Kodiak Common Law Marks throughout all 50 states under accounts with several more national retailers including Target, Costco, Kroger, Sam's Club, and UNFI.  *Id.*, ¶ 23.

10.     Kodiak launched its "Protein Power Cakes" product—a pancake mix packed with 14 grams of protein per serving—in the wake of its "Shark Tank" appearance.  *Id.*, ¶ 20.  This launch marked the beginning of the use of the Kodiak Common Law Marks in commerce for protein-containing products.  *Id.*, ¶¶ 20-21.  The Kodiak Power Cakes product packaging was nearly identical to the company's existing packaging and used the Kodiak Common Law Marks. *Id.*; *id.* at Ex. 4.

11.     Power Cakes debuted nationwide due to Kodiak's existing accounts with national retailers such as Target, Associated Food Stores, Costco, and Amazon.com.  *Id.*, ¶ 20.  The products were a runaway success with consumers, and quickly became the top-selling pancake mix at Target. *Id.*, ¶ 22.

12.     Kodiak experienced significant growth following its "Shark Tank" appearance and the launch of Power Cakes.  The company went   [redacted]   in revenue in 2014 to

[redacted]   in revenue by 2021.  *Id.*, ¶ 24.  Kodiak's marketing and advertising budget for promoting products sold under the Kodiak Common Law Marks has also steadily grown during this period,   [redacted]   in 2016 to   [redacted]   in 2021.  *Id.*, ¶ 25.

13.     Following Power Cakes' launch, Kodiak has steadily expanded the protein-containing products sold under the Kodiak Common Law Marks to include waffles, muffins, granola bars, oatmeal, and a variety of mixes and ready-to-eat baked goods.  *Id.*, ¶ 26; *see also id.*, Ex. 5.

14.     Throughout this time, Kodiak has sold hundreds of millions of units nationwide of its pancake mixes and other health-focused, nutritious, and protein-containing products under the Kodiak Common Law Marks.  *Id.*, ¶ 27.  Kodiak is the number-two bestselling pancake mix in the United States (by dollar sales),   [redacted]   .  The company also has quickly become a top selling brand in the oatmeal and frozen waffle categories, challenging major legacy brands like Quaker and Eggo.  *Id.*

15.     Since appearing on Shark Tank, the Kodiak Common Law Marks and their associated products have also gone on to receive significant regular media attention, including from outlets such as NPR, Forbes, MSN, BuzzFeed, and others.  *Id.*, ¶ 28; *id.*, Ex. 6.  Kodiak pursues an aggressive media strategy across print, digital, and social channels—in 2020 alone, placements in online outlets garnered   [redacted]   impressions nationwide, with print placements garnering   [redacted]   impressions.  *Id.*, ¶ 29; *id.*, Ex. 7.  In 2021, advertising and public relations impressions   [redacted]   .  *Id.*

16.     The protein-containing products sold under the Kodiak Common Law Marks have also developed a following among health, fitness, and exercise-conscious consumers, and Kodiak has executed on a number of successful partnerships with professional athletes that use and love

Kodiak products.  *Id.*, ¶ 30.  Kodiak markets its protein-containing products sold under the

Kodiak Common Law Marks to these consumers through traditional and social media marketing.

*Id.*, ¶ 32; *id.*, Ex. 9.

17.    Many consumers also organically display their affinity for products sold under the

Kodiak Common Law Marks on social media.  *Id.*, ¶ 31; *id.*, Ex. 8.

*Kodiak's Trademarks*

18.    Kodiak owns numerous trademarks used in connection with the sale of its

products, including several for the term KODIAK.  *Id.*, ¶ 5.  These KODIAK trademarks include

federally-registered as well as common law or previously unregistered marks.  *Id.* ¶¶ 6, 11.

19.    Kodiak's previously unregistered marks include the single-word mark KODIAK

(the "Kodiak Word Mark"), and a mark depicting a roaring bear with a tilted head enclosed by a

circle (the "Bear Mark").  *Id.*, ¶ 6.

20.    An example of the Bear Mark is shown as follows:



*Id.*, ¶ 7; *see also Id.*, Ex. 1.  Other examples are shown in the accompanying Declaration of Joel

Clark.  *See* Ex. D, Clark Decl. ¶ 11.

21.    Kodiak has used the Kodiak Common Law Marks for over 25 years, beginning

with the first sales by the Clark brothers in tourist towns in Utah, Idaho, and Wyoming.  *Id.*, ¶¶ 8,

14; *id.*, Ex. 2.  The Kodiak Common Law Marks have been used on health-focused, nutritious food products, including pancake mixes, muffins, and baking mixes.  *Id*.

22.     In addition to using the Kodiak Common Law Marks, plaintiff has likewise used the phrase mark KODIAK CAKES over the same period and as to the same products.  *Id.*, ¶ 9; *id.*, Ex. 1.

23.     Plaintiff owns numerous word and word + design federal trademark registrations that use the term KODIAK, including the single-word mark KODIAK, U.S. Reg. No. 6441657, the phrase mark KODIAK CAKES, U.S. Reg. No. 2015294, and the word + design mark KODIAK CAKES PARK CITY, U.S. Reg. No. 5471173, among others.  *Id.*, ¶¶ 11.

24.     Plaintiff also owns numerous word + design federal trademark registrations for the Bear Mark, including U.S. Reg. No. 5471172 for the logo shown in Paragraph 20, above. Additional examples of the Bear Mark are shown in the Declaration of Joel Clark.  *See* Ex. D, Clark Decl. ¶ 11.

25.     Given plaintiff's location at 8163 Gorgoza Pines Rd., Park City, Utah 84098, the Kodiak Common Law Marks are frequently displayed in connection with the words "Park City" to identify the geographic origin of plaintiff's products.  *Id.*, ¶¶ 1, 11; *see also id*, Ex. 1.

26.     From the beginning in 1995, the Kodiak Common Law Marks have been continuously used to identify Kodiak's goods and distinguish them from those made and sold by others.  The marks have been continuously and prominently displayed on Kodiak's product packaging, displays, advertising, both print and digital.  *Id.*, ¶ 8.

27.     In recent years, Kodiak has increasingly emphasized the Kodiak Word Mark in the marketing, advertising, and branding of its products.  *Id.*, ¶ 33.  The emphasis first started on Kodiak's website in approximately 2020, where Kodak began using a logo containing only the

word KODIAK rather than KODIAK CAKES.  *Id.*; *id.*, Ex. 10.  Since then, Kodiak has slowly

introduced this updated logo across its various products and today, this updated logo is being

used on almost all Kodiak products currently in market.  *Id.*

*Expert Survey Evidence Establishes That The Kodiak Single-word Word Mark Is A Strong Source Identifier for Kodiak's Products*

28.     As part of this lawsuit, Kodiak commissioned a nationwide brand-recognition

survey from its expert, Professor David Franklyn.  *See* Ex. F, Expert Report of David Franklyn.

The methodology and findings of this brand-recognition survey are included in Professor

Franklyn's expert report.  *Id.* at 72-84, 103-108

29.     Professor Franklyn is a Professor of Law at Arizona State University who has

served as a trademark expert in numerous court cases.  *Id.* at 7-8.  A copy of Professor Franklyn's

CV is attached as Exhibit A to his report.  *See* Ex. G.

30.     Professor Franklyn surveyed 256 consumers as part of his brand-recognition

survey.  Ex. F at 104-105.  The surveyed consumers included respondents from all 50 states,

each of whom were required to pass a set of screening questions.  *Id.* at 11, 72.  After passing the

screening questions, consumers were randomly assigned one of two questions for the brand-

recognition survey.  *Id.* at 72.

31.     The first question asked respondents, "When you hear the name 'Kodiak,' what

does it mean to you?"  *Id.*  Roughly half of the survey respondents received this question.  *Id.*

32.     In response to this question, 39% of respondents identified the term "Bear."  *Id.* at

104.  This was the most common response.  *Id.*  19% of respondents identified some variation or

combination of the terms "Alaska / Cold / Island," the second most common response.  *Id.*

33.     The third-most common response by survey takers to the question, "When you hear the name 'Kodiak,' what does it mean to you?" was some variation or combination of the terms "Protein / Pancakes." *Id*.

34.     The second question in the brand-recognition survey also asked to roughly half of the respondents, was, "Do you associate the name 'Kodiak' with the protein-enhanced products of one, or more than one, company?" *Id.* at 72-73.

35.     In response to this question, 44% of respondents answered, "One company," 3% of respondents answered, "More than one company," and 53% of respondents answered, "I do not know or have no opinion." *Id.* at 105.

36.     Respondents who selected "One company" were then asked, "What protein-enhanced products do you associate with the name 'Kodak'?" *Id.* at 106-107.

37.     40 respondents referenced products made by Kodiak in response to this question, including pancake mix, waffles, oatmeal, muffins, mixes for baked goods, frozen breakfast products, and "[b]reakfast foods." *Id*.  These respondents represent 31% of the interested universe of individuals who were asked, "Do you associate the name 'Kodiak' with the protein-enhanced products of one, or more than one, company?" *Id.* at 107.

38.     Professor Franklyn concludes in his report that, "[b]ased on their general and category-specific recognition, alongside their presence in the market since 1994, it is my opinion that Kodiak Cakes, LLC has established KODIAK as a strong source identifier within protein-enhanced products." *Id.* at 110.

39.     This conclusion is based on the results of the brand-recognition survey, including that, "[w]hen asked generally about the term 'Kodiak,' 10% of consumers associate the single-

word KODIAK mark with protein products, pancakes, or other items sold by Kodiak Cakes, LLC." *Id.* at 109.

40.    This conclusion is further based on the fact that, "[w]hen specifically asked about protein-enhanced products, a significant percentage of the interested universe identifies the single-word KODIAK mark with the protein-enhanced products of one company and specifically name products sold by Kodiak Cakes, LLC." *Id.* at 110.

41.    This conclusion is further based on the fact that, in addition to these survey results, Kodiak "has invested significant time, effort, and money in order to build the brand awareness so that [its] brand is recognizable to consumers." *Id.* at 109.

### *Defendants' Use of KODIAK In Commerce*

42.    Defendant Muscle Sports Products, LLC ("Muscle Sports") markets and sells products under the mark KODIAK SPORTS NUTRITION.  Ex. H, Muscle Sports' Responses to Plaintiff's First Set of Discovery Requests, p. 3.  These products include nutritional supplements such as protein powder, pre-workout powder, and fat burning supplements, among others.  Ex. I, Muscle Sports' Deposition Excerpts, pp. 35:25-36:6; Ex. J, Muscle Sports' Product List at 4.

43.    Defendant JRM Nutrasciences, LLC ("JRM") owns the trademark application and other intellectual property for KODIAK SPORTS NUTRITION, U.S. Serial No. 86911351, which it licenses to Muscle Sports.  Ex. K, JRM's Responses to Plaintiff's First Set of Interrogatories, pp. 5, 8.

44.    Jason Mancuso ("Mancuso") is the owner and sole member of both Muscle Sports Products, LLC and JRM Nutrasciences, LLC.  Ex. L, Mancuso Responses to Plaintiff's First Set of Discovery Requests, p. 3.

45.     In addition to the KODIAK SPORTS NUTRITION mark, Defendants brand also includes a visual mark that consists of a roaring bear with a tilted head enclosed by a circle. Ex. I, pp. 45:21-47:6; Ex. M, Kodiak Sports Nutrition Master Logo.

46.     An example of Defendants' visual mark is shown as follows:



*See* Ex. M.

47.     Defendants did not begin selling their KODIAK-branded products until May 27, 2016, long after Kodiak began selling its products under the Kodiak Common Law Marks.  Ex. N, JRM Responses to Plaintiff's Second Set of Interrogatories, p. 4-5; Ex. O, Mancuso Deposition Excerpts, pp. 106:21-107:15; 162:25-163:6 ("Q: Do you have any reason to disagree that Kodiak Cakes began selling its products before Kodiak Sports Nutrition began selling its products in 2016? A: Do I have any reason to disagree? Q: Yes A: No, I don't").

48.     JRM, at Jason Mancuso's direction, applied for the KODIAK SPORTS NUTRITION trademark on February 17, 2016.  Ex. O at (66:18-67:16).

49.     On February 29, 2016, Jason Mancuso posted a picture of Kodiak's Protein Power Cakes on his personal Instagram account.  Ex. O at (110:1-111:14); Ex. P, Mancuso Instagram Post.

50.     JRM admits that the word KODIAK does not describe a characteristic, quality, or ingredient of the products sold under Kodiak's marks.  Ex. Q, JRM's Responses to Defendant's Second Set of Requests for Admissions, p. 7.

51.     Muscle Sports admits that the word KODIAK does not refer to a general class of goods of which Kodiak's products are a member.  Ex. R, Muscle Sports' Responses to Defendant's Second Set of Discovery Requests, p. 8.  Muscle Sports and Mancuso further admit that the word KODIAK does not identify the color, odor, dimensions, ingredients, or function of Kodiak's products.  *Id.*; Ex. O at 161:25-162:19.

52.     Defendants did not retain an expert to counter Professor Franklyn's report.

## **ARGUMENT**

"A party may move for summary judgment, identifying each claim . . . or the part of each claim . . . on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  This "plain language . . . allows a court to grant partial summary judgment on a portion of a claim." *Chevron Pipe Line Co. v. PacifiCorp*, 2:12-cv-287-TC, 2017 WL 3913255, at *2 (D. Utah Sept. 6, 2017) (granting summary judgment on a "discrete, well-defined portion of [plaintiff's] damages claim"); *see also Aubrey v. Koppes*, 383 F. Supp. 3d 1203, 1213-14 (D. Colo. 2019) ("the summary judgment mechanism" is a "versatile tool" that "is available to resolve *parts* of claims") (emphasis in original) (*rev'd in part on other grounds*, 975 F.3d 995 (10th Cir. 2020)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Here, Kodiak seeks summary judgment *only on the first element* of its claims for unregistered trademark infringement under the Lanham Act and Utah common law, which allege infringement of its unregistered Kodiak Common Law Marks.  Specifically, Kodiak asks the Court to dispose of this claim element by ruling that Kodiak has a protectable interest in the Kodiak Common Law Marks in the form of nationwide common law rights.

## I.   KODIAK HAS A PROTECTABLE INTEREST IN ITS UNREGISTERED KODIAK COMMON LAW MARKS AS A MATTER OF LAW

Kodiak's second and third claims assert infringement of its Kodiak Common Law Marks, namely the Kodiak Word Mark and the Bear Mark.  *See* Dkt. 28 at ¶¶ 63-76.  These claims arise under Section 43(a) of the Lanham Act and Utah common law, respectively.  "Section 43(a) . . . protects against service [and trade]mark infringement even if the mark has not been federally registered."  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004) (citation omitted).  "The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a)."  *Id.* at 1219.

To prevail on the second and third claims of the complaint, Kodak must establish that (1) it has a protectable interest in its Kodiak Common Law Marks, and (2) Defendants' use of a similar mark is likely to cause confusion among consumers.  *Id.* at 1215.  Through this Motion, Kodiak seeks summary judgment only on this first prong—whether it has a protectable interest in the Kodiak Common Law Marks.  Kodiak specifically asks the Court to rule as a matter of law **that it has a nationwide protectable interest in the Kodiak Common Law Marks for health-focused, nutritious food products, including pancake mixes, muffins, and baking mixes for the time frames and geographic regions identified herein, namely: 1) in Utah, Idaho, and Wyoming beginning in 1995, 2) in the Western, Southwestern, Rocky Mountain, Midwestern, and Mid-Atlantic regions of the United States beginning in 2004, and 3) nationwide beginning in 2012**.  Clark Decl. ¶¶ 8, 13, 16-17.  Demonstrating this protectable interest is part of Kodiak's case-in-chief and an issue of which it bears the burden of proof at trial.  *Donchez,* 392 F.3d at 1216.

A.  **The Kodiak Common Law Marks Are Inherently Distinctive**

A plaintiff establishes a protectable interest in an unregistered mark by showing 1) the

mark is distinctive and 2) that the plaintiff has priority of use over the defendant.  *B&B*

*Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015) ("One who first uses a distinct

mark thus acquires rights to that mark").  The Kodiak Common Law Marks are both inherently

distinctive.  When evaluating whether a mark is inherently distinctive, courts will first categorize

a mark according to the following trademark classifications: "'generic, descriptive, suggestive,

arbitrary, and fanciful.'"  *See Donchez*, 392 F.3d at 1216 (citation omitted).  *Id.*  Fanciful,

arbitrary, and suggestive marks "are inherently distinctive, and thus receive the greatest

protection against infringement."  *Id.*  "The classification of a mark can be determined on

summary judgment as a matter of law where there are no material disputed facts relating to the

issue."  *Rockland Exposition, Inc. v. All. Of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d

288, 314 (S.D.N.Y. 2012); *see also Donchez*, 392 F.3d at 1216-19.  Here, the undisputed facts

show the Kodak Marks are inherently distinctive because they are, at a minimum, arbitrary

trademarks.  Arbitrary marks are "words in common linguistic use" that "neither suggest nor

describe any ingredient, quality, or characteristic of those goods or services" to which they are

applied.  2 McCarthy on Trademarks and Unfair Competition, § 11:11 (5th ed. 2022); *see also*

*First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 655 (10th Cir. 1996) ("An arbitrary

mark has a common meaning unrelated to the product for which it has been assigned, such as

APPLE when applied to computers.").

"Kodiak" is a common word that refers primarily to the Kodiak Bear or to Kodiak

Island, Alaska.  *See, e.g., Kodiak*, MERRIAM-WEBSTER.COM, https://www.merriam-

webster.com/dictionary/Kodiak ("island of southern Alaska in the Gulf of Alaska").[1]  Aware of this common meaning, Joel and Jon Clark applied the word KODIAK and the image of a roaring bear in an arbitrary, unfamiliar way to mark their health-focused pancake mixes and other baking products.  The Clarks felt the Kodiak Common Law Marks personified the rustic, outdoor, frontier "feel" they wanted to bring to the company's brand.  *See* Clark Decl., ¶ 12.  Indeed, JRM itself admits "the word 'Kodiak' does not describe a characteristic, quality, or ingredient of the products sold under Plaintiff's Marks."  Ex. Q, p. 7.  *This is an admission that the Kodiak Word Mark meets the legal definition of an arbitrary mark as articulated above*.

In sum, the undisputed facts show the Kodiak Common Law Marks consist of the single-word mark KODIAK and the depiction of a roaring bear applied in an unfamiliar way to pancakes and other baking mixes and snacks.  No reasonable jury could find the marks are not entitled to protection, when Defendants themselves admit the marks are not generic or even descriptive.  The Court should therefore hold as a matter of law that the Kodiak Common Law Marks are inherently distinctive.

## B. Kodiak Has Nationwide Priority of Use In the Kodiak Common Law Marks

Along with distinctiveness, a plaintiff must also demonstrate priority of use to establish a protectable interest in an unregistered mark.  "'[S]o long as a person is the first to use a particular mark,' that person will prevail against subsequent users of the mark."  *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1053 (10th Cir. 2021) (citation omitted).  To establish use under the Lanham Act, a plaintiff must demonstrate "bona fide use of a mark in the ordinary course of

---

[1] "Where [a] term is not a term of art, courts may consult dictionaries to assess ordinary meaning."  *Lawrence v. First Fin. Invest. Fund V, LLC*, 444 F. Supp. 3d 1313, 1321 (D. Utah 2020).

trade, and not . . . merely to reserve a right in a mark."  15 U.S.C. § 1127.  In claims for

unregistered marks, a plaintiff must also show use in the geographic market in which it seeks

protection.  *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1046-47 (10th Cir.

2021) ("[A] trademark . . . extends to every market where the trader's goods have become known

and identified by his use of the mark") (citation omitted).  Priority in a geographic area may be

shown by actual use in that area or by proving that the area falls within a mark's "zone of

reputation."  *Peaches Ent't Corp. v. Ent't Repertoire Ass'n*, 62 F.3d 690, 694-95 (5th Cir. 1995).

Here, Kodiak's use of the Kodiak Common Law Marks began in November 1995 for its

health-focused, nutritious food products, including pancake mixes, muffins, and baking mixes

sold in Utah, Idaho, and Wyoming.  The company's use then expanded to the Western,

Southwestern, Rocky Mountain, Midwestern, and Mid-Atlantic regions of the United States

beginning in 2004 through the Safeway account, and saturated nationwide beginning with the

Target account in 2012.  Clark Decl. ¶¶ 8, 13, 16-17.

Plaintiff's early use and subsequent national expansion are unquestioned.  Kodiak's first

use of the marks in commerce was November 27, 1995.  Clark Decl., ¶¶ 8, 13; *id.*, Ex. 2.  In the

company's early years, the Clarks sold products under the Kodiak Common Law Marks in tourist

towns in Utah, Wyoming, and Idaho to locals and to travelers from across the nation.  Clark

Decl., ¶ 14.  In 2004, Kodiak landed Safeway as its first major account and began selling its

products in 1,802 stores in the Western, Southwestern, Rocky Mountain, Midwestern, and Mid-

Atlantic regions of the United States.  *See* Clark Decl. ¶ 16; *see also* Exhibit B, p. 2.  In 2012,

Kodiak scored its second major retail distribution order with Target, placing its products under

the Kodiak Common Law Marks in even more stores nationwide.  *Id.* at ¶ 17.

Further, in June 2014, Kodiak launched Protein Power Cakes, kicking off the use in commerce of the Kodiak Common Law Marks for the additional category of protein-containing products.  *Id.* at ¶ 20.  The packaging for Power Cakes used both the Kodiak Word Mark and Bear Mark.  *Id.* at ¶ 21; *id.*, Ex. 4.  Power Cakes were a smash hit with consumers, quickly becoming the top-selling pancake mix at Target.  *Id.* at ¶ 22.  Due to Kodiak's existing accounts with retailers like Target, Associated Food Stores, Costco, and Amazon.com, Power Cakes debuted in stores nationwide.  *Id.* at ¶ 20.  Their success was further boosted by Kodiak's April 2014 appearance on the hit TV show "Shark Tank," which caused a nationwide spike in sales of existing Kodiak products for the six-weeks after the show's premiere.  *Id.* at ¶¶ 19-20.  By the end of 2014, Kodiak was selling products under the Kodiak Common Law Marks under numerous national accounts with various retailers including Target, Kroger, Sam's Club, and UNFI.  *Id.* at ¶ 23.  All of this activity predates defendants' infringement, which began in 2016, and clearly demonstrates plaintiff's priority of use for the marks.

The consequences of this early activity are demonstrated by Kodiak's continued market expansion.  The company went   [redacted]   in revenue in 2014 to   [redacted]   in revenue by 2021.  *Id.* at ¶ 24.  Throughout this time, Kodiak became the number-one best-selling pancake-mix brand at Target and the number-two bestselling pancake mix in the United States (by dollar sales)   [redacted]   .  *Id.* at ¶¶ 24, 27.  Kodiak also has quickly become a top selling brand in the oatmeal and frozen waffle categories, challenging major legacy brands like Quaker and Eggo.  *Id.*  Kodiak's marketing and advertising budget has also steadily grown, reaching   [redacted]   in 2021, and the company has amassed significant media coverage, [redacted]   of advertising and public relations impressions across the country.  *Id.* at ¶ 25, 29; *id.*, Ex. 6.  Kodiak's products are now sold in almost all major national retailers, including

Costco, Kroger and Walmart, as well as almost all major regional retail and grocery chains in all regions of the United States and Canada. *Id.* at ¶ 23. This impressive growth and success arises from the early use and distinctiveness of the Kodiak Common Law Marks for health-focused, nutritious, and protein-containing products.

Moreover, Defendants themselves admit that plaintiff's use of the Kodiak Common Law Marks predates their confusingly-similar branding. Defendants first began selling the infringing products on May 27, 2016, *see* Ex. N, p. 4-5, which is twelve years after plaintiff's nationwide distribution through the Safeway account. Defendants do not dispute this fact. *See* Ex. O at 162:25-163:6 ("Q: Do you have any reason to disagree that Kodiak Cakes began selling its products before Kodiak Sports Nutrition began selling its products in 2016? A: Do I have any reason to disagree? Q: Yes A: No, I don't"). Indeed, Defendants were aware Kodiak had priority as to the Kodiak Common Law Marks before launching their own products, because Jason Mancuso posted a picture of Kodiak's Protein Power Cakes on his personal Instagram on February 29, 2016. *See* Ex. P. Kodiak thus has undisputed priority of use over the Defendants as to the Kodiak Common Law Marks.

In sum, the undisputed evidence shows plaintiff has clear priority to the Kodiak Common Law Marks, beginning as early as 1995 and culminating in national product saturation long before defendants started infringing in 2016. Accordingly, no reasonable jury could conclude Kodiak does not have priority of use as to the Kodiak Common Law Marks. Plaintiff's arbitrary Kodiak Common Law Marks are inherently distinctive, and plaintiff has undisputed priority of use. Given these uncontroverted facts, the Court should thus rule as a matter of law that Kodiak has a nation-wide protectable interest in its unregistered Kodiak Common Law Marks.

II.   **PLAINTIFF'S LENGTHY USE OF "KODIAK CAKES" QUALIFIES AS USE OF THE SINGLE-WORD MARK "KODIAK" THROUGH BOTH DOMINANCE OF THE PROMINENT PORTION OF THE MARK AND THROUGH TRADEMARK TACKING**

Plaintiff has used the Kodiak Word Mark since its earliest product sales in 1995.  In addition, through long use of the composite mark KODIAK CAKES, plaintiff has established a protectable interest in the Kodiak Word Mark standing alone.  Notwithstanding this interest, Kodiak may, as an alternative to establishing priority in the Kodiak Word Mark through actual use, establish priority by "tacking" the first-use date of the KODIAK CAKES mark (also November 27, 1995) onto the Kodiak Word Mark.  *See* Clark Decl., ¶ 9.

A.   **The Word "KODIAK" Is The Dominant Portion of The Composite Mark "KODIAK CAKES"**

The holder of a registered composite mark may establish common law rights in one of the mark's separable elements based on the element's own distinctiveness and dominance.  *See, e.g., Proxite Prods., Inc. v. Bonnie Brite Prods. Corp.*, 206 F. Supp. 511, 514-16 (S.D.N.Y. 1962) (recognizing plaintiff's common law rights in "BONNIE" portion of registered mark "PROX BONNIE BLUE" based on term's extended use); *Universal Motor Oils Co., Inc. v. Amoco Oil Co.*, 15 U.S.P.Q. 2d 1613, 1990 WL 86178, *8 (D. Kan. May 24, 1990) (the fact that plaintiff's "registered trademark [was] DYNA-PLEX 21C" did not preclude establishment of "common law trademark rights in 21C as a separate mark").  In *Proxite*, the court recognized that notwithstanding the plaintiff's registered mark "PROX BONNIE BLUE" for laundry products, its "use of BONNIE" alone for roughly 20 years "created certain common law rights in its favor" that "may be sufficient" to establish a protectable interest.  206 F. Supp. at 514.

Similarly, plaintiff's continuous use of "Kodiak" as a modifier or adjective to the "cakes" it began selling in November 1995 establishes common-law rights in the single-word mark

KODIAK separate and apart from the composite mark KODIAK CAKES.  As the dominant portion of KODIAK CAKES, the word KODIAK creates the same strong commercial impression for plaintiff's products.[2]  Kodiak thus has protectable common law rights in the Kodiak Word Mark separate and apart from its use of KODIAK CAKES.

**B.   Plaintiff May Also Establish Priority In the Kodiak Word Mark by Tacking Its First Use of KODIAK CAKES**

Under the doctrine of "tacking," "a party may clothe a new mark with the priority position of an older mark" when "the original and revised marks are 'legal equivalents.'"  *Hana Fin., Inc. v. Hana Bank*, 547 U.S. 418, 420 (2015).  Marks are considered "legal equivalents" when they "'create the same, continuing commercial impression' so that consumers 'consider both as the same mark.'"  *Id.* at 422 (citation omitted).  In *American Security Bank v. American Security Trust Co.*, for example, the court held that the marks AMERICAN SECURITY and AMERICAN SECURITY BANK were legal equivalents because "the word 'bank' is purely descriptive and adds nothing to the origin-indicating significance of AMERICAN SECURITY." 571 F.2d 564, 567 (C.C.P.A. 1978); *see also Laura Scudder's v. Pac. Gamble Robinson Co.*, 136 U.S.P.Q. 418, 419-20, 1962 WL 8576 (T.T.A.B. 1962) (marks "BLUE BIRD" and "BLUE ROBIN" "create[d] substantially the same general impression" of "a blue-colored bird").  "If the facts warrant it, a judge may decide a tacking question on a motion for summary judgment." *Hana Bank*, 574 U.S. at 423.

---

[2] This commercial strength is further reflected in Professor Franklyn's finding that KODIAK is a "strong source identifier" for Kodiak's products, as explained below.  Ex. F at 110; *see Sara Lee Corp. v. Sycamore Fam. Bakery, Inc.*, No. 2:09-cv-523-DAK, 2009 WL 3617564, *3 (D. Utah Oct. 27, 2009) (dominant portion of mark, as confirmed by survey, was primary factor in mark's commercial impression).

The facts here warrant a determination by summary judgment that Kodiak's use of the single-word mark KODIAK for pancakes, waffles, and other breakfast and baking products is the legal equivalent of KODIAK CAKES. Like AMERICAN SECURITY BANK and AMERICAN SECURITY, the commercial impression of the KODIAK CAKES mark is the same as the single word KODIAK without the descriptive add-on "cakes". The words themselves support this conclusions. Here, "cakes" is the trailing product description modified by the leading word "Kodiak". What kind of pancakes are they? They are "Kodiak" cakes. This arbitrary and first-in-sight connection of "Kodiak" to "cakes" mandates that the primary portion of the mark is "Kodiak". Indeed, plaintiff disclaimed the word "cakes" from its federal registration of the KODIAK CAKES mark. *See* Ex. S, U.S. Trademark Reg. No. 2052194.

Although expert testimony is not necessary for summary adjudication of plaintiff's rights to the Kodiak Word Mark, Professor Franklyn's brand-recognition survey is additional evidence that "Kodiak" is the primary portion of the mark in the mind of consumers. Defendants offer no contrary evidence on this point. Dr. Franklyn's survey shows ordinary purchasers associate the single-word KODIAK mark with the same products sold under the KODIAK CAKES mark. In Franklyn's undisputed survey, **_44%_** of respondents associated the name "Kodiak" with the protein-enhanced products of **_one_** company. Ex. F, 105. When asked to identify what products they associated with the name KODIAK, 31% of respondents identified products sold under the KODIAK and KODIAK CAKES marks, including pancake mix, waffles, oatmeal, muffins, and breakfast foods. *Id.* at 106-107. Franklyn further concluded KODIAK alone was a "strong source identifier within protein-enhanced products." *Id.* at 110. The Franklyn survey thus shows KODIAK leaves the same commercial impression on consumers as KODIAK CAKES. *See* McCarthy, § 17:26 (explaining that the continuing "commercial impression required for legal

equivalency should be "determined from the perspective of the ordinary purchaser").  Defendants

offer no evidence to contradict this plain fact.

Further, Kodiak's use of the Kodiak Common Law Marks began in November 1995 for

its health-focused, nutritious food products, including pancake mixes, muffins, and baking mixes

sold in Utah, Idaho, and Wyoming, expanded to the Western, Southwestern, Rocky Mountain,

Midwestern, and Mid-Atlantic regions of the United States beginning in 2004 through the

Safeway account, and achieved national saturation with the Target account in 2012.  Clark Decl.

¶¶ 8, 13, 16-17.  And while the record shows that Kodiak has used the single-word mark

KODIAK in commerce for its products over the same lengthy period, it has particularly

emphasized the word standing alone in its branding since 2020.  Clark Decl., ¶ 33; *id.*, Ex. 9.

This emphasis on the single-word mark KODIAK may, to the extent necessary, be tacked on to

Kodiak's longstanding use of KODIAK CAKES via summary judgement.  *See Hana Bank*, 574

U.S. at 423.  Accordingly, because the KODIAK and KODIAK CAKES marks are legal

equivalents, the Court should tack the first-use date of KODIAK CAKES onto the KODIAK

mark and remove this issue for a more streamlined trial.

## <u>CONCLUSION</u>

Based on the undisputed evidence set forth above, plaintiff asks the Court to rule as a

matter of law that it has a nationwide protectable interest in the Kodiak Common Law Marks for

health-focused, nutritious food products, including pancake mixes, muffins, and baking mixes

for the time frames and geographic regions identified herein, namely: 1) in Utah, Idaho, and

Wyoming beginning in 1995, 2) in the Western, Southwestern, Rocky Mountain, Midwestern,

and Mid-Atlantic regions of the United States beginning in 2004, and 3) nationwide beginning in

2012. This outcome is warranted because the Kodiak Common Law Marks are inherently distinctive, and Kodiak has long priority of use through both actual use and trademark tacking.

Dated this 29th day of July, 2022.

LEGENDS LAW GROUP, PLLC

Stephen H. Bean, Esq.
Nicholas Wells, Esq.

MANNING CURTIS BRADSHAW
& BEDNAR PLLC

Alan C. Bradshaw, Esq.
Chad R. Derum, Esq.
Michael E. Harmond, Esq.

*Attorneys for Plaintiff Kodiak Cakes, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Friday, July 29, 2022, I filed the *Redacted Version* of the foregoing **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ITS ESTABLISHMENT OF COMMON LAW RIGHTS TO THE KODIAK MARKS** with the Clerk of Court using the Electronic Court Filing System, which will send a notice of the electronic filing to:

> Dax Anderson, Esq.
> danderson@kmclaw.com
> Kirton McConkie
> 36 S. State Street, Suite 1900
> Salt Lake City, UT 84111

Stephen H. Bean
Utah Bar No.: 9240
**LEGENDS LAW GROUP, PLLC**
330 N Main
Kaysville, UT 84037
steve@legendslaw.com
(801) 337-4500